BARRON v EDWARDS

1. SALES—GOODS—CROPS—UNIFORM COMMERCIAL CODE.

Growing crops are included within the statutory definition of "goods" (MCLA 440.2105).

2. SALES—GOODS—CROPS—SOD.

Sod is personalty and a growing crop included within the statutory definition of "goods", where it has been treated as a commercial product by the seller engaged in the business of selling sod and where it owes its existence to yearly fertilizing and cultivation by man (MCLA 440.2105).

3. PLEADING—ALTERNATE CLAIMS—ESTOPPEL—INCONSISTENT ACTION.

The law recognizes alternative claims and defenses; therefore in an action involving alternate claims and defenses regarding real estate and personalty, the filing of a notice of lis pendens consistent with the protection of one defense regarding real estate does not estop the assertion of a defense based on the law of personalty inconsistent with such filing (GCR 1963, 111.9).

4. SALES—UNIFORM COMMERCIAL CODE—REASONABLE TIME—DEFINITION.

What constitutes a reasonable time for the sending of a confirmatory memorandum within the purview of the Uniform Commercial Code depends on the nature, purpose, and circumstances of such action and is a question for the trier of fact to determine (MCLA 440.1204[2], 440.2201).

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted Division 1 January 8, 1973, at Detroit. (Docket Nos. 13482, 13757.) Decided February 23, 1973.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 67 Am Jur 2d, Sales §§ 12, 130.

[3] 61 Am Jur 2d, Pleading § 395.

[4] 67 Am Jur 2d, Sales § 176.

Complaint by Orville H. Barron against Harold E. Edwards to restrain defendant from removing plaintiff's sod pursuant to an oral contract. Defendant counterclaimed for specific performance or, alternatively, damages. Partial accelerated judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Brashear, Brashear & Duggan* (by *Gerald M. Conley)*, for plaintiff.

*Charest, Clancy & Katulski,* for defendant.

Before: J. H. GILLIS, P. J., and BASHARA and O'HARA,\* JJ.

BASHARA, J. Plaintiff owned and operated a sod farm in Wayne County. Defendant was in the business of selling sod and had purchased sod from plaintiff on several prior occasions. Defendant alleges that on November 10, 1969, he entered into an oral contract with plaintiff whereby he agreed to purchase the plaintiff's entire crop of sod, consisting of approximately 30 acres, for $350 per acre. Defendant paid $700 in 1969 and removed approximately 1-1/2 acres of sod. His answer alleged that the understanding between the parties was that he would remove the remaining 28 acres in the spring of 1970.

An additional $700 was paid by defendant to the plaintiff on March 7, 1970, and on March 26, 1970, defendant delivered a letter to the plaintiff confirming their oral agreement. From March 7, 1970, to April 9, 1970, the defendant entered upon the remaining acreage for the purposes of fertilizing and caring for the sod. On April 9, 1970, plaintiff

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

notified defendant that the State Highway Department had condemned and taken title to the entire farm. He offered to return the $700 and reimburse the defendant for any funds expended on maintaining the sod. This payment was refused by defendant.

Suit was commenced by plaintiff to restrain defendant from removing any sod. Defendant filed a counterclaim requesting specific performance of the contract or, in the alternative, damages. Plaintiff moved for partial accelerated judgment, with respect to the counterclaim, on the grounds that the contract covered an interest in land and hence was unenforceable since it was not reduced to writing. Defendant argued that the sod was personalty and thus governed by the Uniform Commercial Code[1] rather than the Statute of Frauds.[2] The trial court granted the plaintiff's motion on the basis that the contract for the sale of sod involved an interest in land and. hence was invalid if not in writing. From this ruling, the defendant appeals.

The statutory provisions applicable to the solution of this problem are MCLA 440.2105(1); MSA 19.2105(1), and MCLA 440.2107(2); MSA 19.2107(2), which provide:

"Sec. 2105. (1) 'Goods' means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action. 'Goods' also includes the unborn young of animals and *growing crops and other identified things attached to realty as described in the section on goods to be severed from realty.* (Emphasis supplied.)

"Sec. 2107. (2) A contract for the sale apart from the

---

[1] MCLA 440.2105(1); MSA 19.2105(1).

[2] MCLA 566.106; MSA 26.906.

land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (1) is a contract for the sale of goods within this article whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance."

Although these provisions do not specifically state what is to be included within the meaning of growing crops, the Official Comment to 2-105 of the Uniform Commercial Code (MCLA 440.2105; MSA 19.2105), contains the following statement:

"Growing crops are included within the definition of goods since they are frequently intended for sale. The concept of 'industrial' growing crops has been abandoned, for under modern practices fruit, perennial hay, nursery stock and the like must be brought within the scope of this Article."

Thus, if sod can be considered a crop rather than a part of the realty, it is within the above-cited statutory provisions. The factors used in determining this issue are stated in 21 Am Jur 2d, Crops, § 3, pp 581–582:

"The primary and most easily recognizable distinction is that between fructus naturales and fructus industriales. Apart from statutes or peculiar circumstances requiring a contrary conclusion, it is stated in many cases that those products of the earth which are annual, raised by yearly manurance and labor, and which owe their annual existence to cultivation by man, may be treated as personal chattels, for some purposes at least, even while still annexed to the soil and irrespective of their maturity. Conversely, and also in the absence of statutory provisions or peculiar circumstances requiring a contrary conclusion, fructus naturales—grasses growing from perennial roots and,

according to some courts, the fruit or other products of trees, bushes, and plants growing from perennial roots —are regarded as realty while they are unsevered from the soil."

Here the sod owed its existence to yearly fertilizing and cultivation by man. It is also significant that plaintiff raised this sod on several prior occasions and apparently treated it as a commercial product. Thus, this sod cannot be considered "growing grass" as the plaintiff contends. We therefore hold that the sod in the instant case was personalty.

This result is supported by recent decisions which have interpreted the above-cited statutory provisions. In *Groth v Stillson,* 20 Mich App 704 (1969), this Court held that Christmas trees were growing crops. Our Court relied on the fact that the trees required annual care, and that such trees were a fruit of industry. Likewise, in the instant case, the sod owed its existence to annual maintenance and fertilization.

Also applicable is *Azevedo v Minister,* 86 Nev 576, 581; 471 P2d 661, 664 (1970). In *Azevedo* that Court used the following reasoning in holding that hay is within the meaning of "growing crops".

"The sale of hay is included within the definition of the sale of 'goods' as defined by NRS 104.2105(1) and NRS 104.2107(2), which when read together provide that the sale of 'growing crops', when they are to be 'severed by the buyer or by the seller', constitutes the sale of goods within the definition of that expression in the Uniform Commercial Code."

Plaintiff next contends that defendant is estopped from denying that the subject matter of the contract was realty because he filed a notice of lis pendens. We do not agree. The law recognizes

alternative claims and defenses. GCR 1963, 111.9. Defendant was merely protecting himself in the event that the trial court might hold that the sod was realty. In the trial court defendant contended that even if the court found that the sod was realty, his partial performance was sufficient to remove the oral agreement from the operation of the Statute of Frauds. Since defendant did raise this alternate claim below, the notice of lis pendens is consistent with the alternate claim.

Plaintiff further argues that even if this Court finds that the sod in question is personalty, the contract is nevertheless unenforceable due to MCLA 440.2201; MSA 19.2201, which provides in relevant part:

"Sec. 2201. (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."

Defendant does not dispute the fact that the contract was for the sale of goods valued at more than $500 but contends that subsection (2) controls the instant case. We agree.

The record indicates that both parties were mer-

chants. Defendant was in the business of selling and installing sod and the plaintiff had sold sod on numerous occasions. The record further indicates that a confirmatory memorandum was sent by the defendant to the plaintiff and that the plaintiff did not send a written notice of objection until the ten-day period had elapsed.

The appellee counters that this provision is not controlling of the instant case since the confirmatory memorandum was not delivered within a reasonable time as required by statute.

As to what constitutes a reasonable time, MCLA 440.1204(2); MSA 19.1204(2), states:

"What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action."

This same argument was raised in *Azevedo, supra,* and the identical statutory provision was construed as follows:

"Appellant argues that, the delay of 10 weeks (November 9 to January 21) as a matter of law is an unreasonable time. We do not agree. What is reasonable must be decided by the trier of the facts under all the circumstances of the case under consideration." *Azevedo, supra,* at 666.

We agree that, under the circumstances present in the instant case, there is a factual question as to whether the defendant sent the memorandum within a reasonable time. Since an accelerated judgment was granted, there was no testimony with regard to this question. We remand so as to allow the trier of fact to determine this issue. Reversed and remanded. Costs to defendant.

All concurred.