ACE CONCRETE PRODUCTS COMPANY v CHARLES J. ROGERS
CONSTRUCTION COMPANY

1. SALES—SALE OF GOODS—UNIFORM COMMERCIAL CODE.

The sale of goods is governed by the provisions of the Uniform
Commercial Code.

2. FRAUDS, STATUTE OF—UNIFORM COMMERCIAL CODE—CONTRACTS—
SALE OF GOODS—WRITING—CONFIRMATION—QUANTITY TERM.

The statute of frauds provisions of the Uniform Commercial Code
allows for a sales contract not fully in writing between mer-
chants to be evidenced by a writing in confirmation of the
contract where the confirmation is within a reasonable time of
the contract and meets three requirements: (1) it must evidence
a contract for the sale of goods; (2) it must be "signed" by the
party to be charged; and (3) it must specify a quantity; where
the quantity term can only be determined by reference to parol
evidence the confirmation fails to meet the statute of frauds
requirements (MCLA 440.2201; MSA 19.2201).

Appeal from Macomb, Robert J. Chrzanowski, J.
Submitted April 12, 1976, at Detroit. (Docket No.
24421.) Decided June 24, 1976. Leave to appeal
applied for.

Complaint by Ace Concrete Products Company
against Charles J. Rogers Construction Co. for
breach of contract. Judgment for plaintiff. Defend-
ant appeals. Reversed.

*Schmier, Fealk & Ellis,* for plaintiff.

*John R. Cobau,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 67 Am Jur 2d, Sales §§ 2, 4.
[2] 67 Am Jur 2d, Sales § 19.

Before: BASHARA, P. J., and R. B. BURNS and QUINN, JJ.

BASHARA, P. J. This is an action for breach of contract. The trial judge sitting without a jury granted a judgment of $38,000 to the plaintiff. Defendant appeals.

In early 1972 the Metropolitan Detroit Water Board awarded the defendant a contract to construct a sewer tunnel identified as P.C.I.-13. In August of 1972 the plaintiff entered into negotiations to supply concrete for the project.

Following negotiations the plaintiff sent a letter dated August 23, 1972, to representatives of the defendant. The letter provided in material part:

> "RE: City of Detroit
> Water Board
> P.C.I.-13 Job 1450[1]

"Gentlemen:

"May we give you the following price quote on concrete for the above job."

It then proceeded to discuss price quotations and variations.

The plaintiff supplied concrete from August through December, 1972. The defendant paid the plaintiff pursuant to the terms of the letter of August 23, 1972.

On March of 1973 the defendant issued a purchase order to the plaintiff dated August 21, 1972. It provided:

"Please furnish subject to our inspection and rejection if unsatisfactory, the following, viz:    1450

| Quantity | ARTICLE |
|---|---|
|  | Concrete for tunnels " |

---

[1] "Job 1450" was the identification number assigned the project by the defendant.

The space for the quantity term was left blank.

In 1973 the defendant encountered a number of hindrances that delayed pouring of concrete until November. At that time the defendant switched concrete suppliers. Defendant's action precipitated this lawsuit.

The trial judge found that the negotiations of August, 1972, culminated in an oral agreement, whereby the plaintiff would furnish all the concrete required by the defendant to construct the outer lining of the tunnel. We accept this finding as supported by the evidence.[2] The trial judge further ruled:

"The Court finds that the oral agreement, along with *the letter of August 23rd, to be in accordance with Section 2, paragraph 2 Section 2201 of the Uniform Commercial Code.* It was a dealing between two merchants that was subsequently confirmed in writing. *I don't feel that Section 2 requires quantity be stated as required in Section 1,* but I feel if quantity is a necessary determination, necessary element, in the exception to Section 2 of Section 2201, the quantity could easily have been determined for 11,000 lineal feet for a tunnel 11 feet in diameter, and the plans and specifications were on file to make that determination." (Emphasis supplied.)

The issue for our consideration is whether the letter of August 23, 1972, or the purchase order of March, 1973, complies with the requirements for a written confirmation under MCLA 440.2201(2); MSA 19.2201(2).

Sale of goods is governed by the provisions of the Uniform Commercial Code. *Barron v Edwards,* 45

---

[2] The party alleging the contract has the burden of proving an oral contract was made prior to the written confirmation. *American Parts Co, Inc v American Arbitration Association,* 8 Mich App 156, 166; 154 NW2d 5 (1967), *lv den* 380 Mich 762 (1968).

Mich App 210; 206 NW2d 508 (1973). In relevant part the statute of frauds provisions of the code provide:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received." MCLA 440.2201; MSA 19.2201.

A written confirmation pursuant to 2201(2) must satisfy the requirements of a writing under 2201(1). White & Summers, Uniform Commercial Code, §§ 2–4, p 54. The Official Uniform Commercial Code Comment sets forth those requirements:

"First, it must evidence a contract for the sale of goods; second, it must be 'signed', a word which includes any authentication which identifies the party to be charged; and *third it must specify a quantity.* "(Emphasis supplied.) Official Uniform Commercial Code following MCLA 440.2201 at p 125; MSA 19.2201 at p 352.

Therefore, a confirmation must specify a quantity term. The trial judge erred in holding that no quantity term was required by 2201(2).

Our conclusion that a written confirmation must contain a quantity term is buttressed by the fact that this is the overwhelming view adopted by the commentators. White & Summers, *supra*,[3] 1 Anderson, Uniform Commercial Code (2d ed), § 2-201:51, pp 283–284; 3 Bender's UCC Service, Duesenberg & King, *Sales and Bulk Transfers,* § 2.04(2), pp 2-67 through 2-68,[4] and case law. *Azevedo v Minister,* 86 Nev 576, 582; 471 P2d 661, 665 (1970), *John H Wickersham Engineering & Construction, Inc v Arbutus Steel Co,* 58 Lanc L Rev 164; 1 UCC 49 (Pa Common Pleas, 1962), *Doral Hosiery Corp v Sav-A-Stop, Inc,* 377 F Supp 387, 389 (ED Pa, 1974), *Fortune Furniture Manufacturing Co, Inc v Mid-South Plastic Fabric Co, Inc,* 310 So 2d 725, 728 (Miss, 1975), *Fort Hill Lumber Co v Georgia-Pacific Corp,* 261 Or 431, 435–436; 493 P2d 1366, 1368–1369 (1972).

Neither the letter of August 23, 1972, nor the purchase order of March, 1973, set forth a quantity term. The letter merely identified the project, while the purchase order left the quantity term blank.

We reject plaintiff's invitation to resort to the evidence adduced at trial to supply the missing quantity term. The quantity term must appear on

[3] Interestingly, White & Summers, Uniform Commercial Code, §§ 2-4, p 51, n 44 suggests an alternative interpretation of 2201:

"All the commentators say the memo must state a quantitative term. However, a close reading of section 2-201 indicates that all the commentators may be wrong. An alternative interpretation of the language is that only if the writing states a quantitative term is that term determinative."

[4] 3 Bender's UCC Service, Duesenberg & King, Sales and Bulk Transfers, § 2.04(2) pp 2-67 through 2-68 states that a 2201(2) confirmation quite possibly could be tested by the same requirements as a writing under 2201(1). However, the authors hypothesize that since 2201(1) requires the writing "indicate" that a contract for sale has been made, while 2201(2) refers to a writing "in confirmation of" a contract, conceivably case law could develop a stricter standard for a confirmation.

the confirmation without reference to parol evidence.[5] Since neither document specified a quantity term, they failed to satisfy the statute of frauds.

Reversed. Costs to defendant.

---

[5] *Riegel Fiber Corp v Anderson Gin Co,* 512 F2d 784 (CA 5, 1975), does not compel a different result. *Riegel* is an action under 2201(1). In that case the contract provided the plaintiff would purchase "all the acceptable cotton produced during the crop year of 1973 on the following acreage", *Riegel, supra,* p 788, n 7. The contract then identified the acreage. *Riegel* is distinguishable because the memorandum provided a quantity term, that is, all of the output of a specific acreage. The issue before the court was whether the quantity term was too indefinite for judicial enforcement. The court looked to whether the contracts contained terms acceptable to the majority of buyers and sellers knowledgeable in the cotton trade in finding the quantity term sufficiently definite.